DocuSign Envelope ID: B0D58726-E8F4-4848-89DE-9C030C5B0BC3

## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BT BRANDS, INC. and<br>GARY COPPERUD,<br><br>  Plaintiffs,<br><br>  v.<br><br>NOBLE ROMAN'S INC., A. SCOTT MOBLEY,<br>PAUL W. MOBLEY, MARCEL HERBST,<br>DOUGLAS H. COAPE-ARNOLD, and<br>WILLIAM WILDMAN,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs BT Brands, Inc. and Gary Copperud, BT Brands' C.E.O., allege as follows for their Complaint against Defendants Noble Roman's, Inc. (the "Company") and its Directors, A. Scott Mobley, Paul W. Mobley, Douglas H. Coape-Arnold, Marcel Herbst, and William Wildman (together, the "Directors").

## NATURE OF THE ACTION

1.      This is a direct stockholder action for declaratory and injunctive relief under Section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(a) (the "Exchange Act"), and under state law.[1]

2.      Together, Plaintiffs BT Brands and Mr. Copperud own or have voting authority with respect to approximately 8.46% of the Company's outstanding shares of common stock.

---

[1] The factual allegations below are made on information and belief based upon, *inter alia*, the investigation and collection of publicly available information performed by BT Brands, Mr. Copperud, and their attorneys, except where noted, and except as to the allegations pertaining to BT Brands and Mr. Copperud, which are based upon personal knowledge, and as to totals of shareholder votes, which are based on reported data regarding those votes.

DocuSign Envelope ID: B0D58726-E8F4-4848-89DE-9C030C5B8BC3

3.      In connection with the Company's Annual Meeting of Shareholders (originally scheduled for July 6, 2023), BT Brands nominated Mr. Copperud for election to a seat on the Company's five-member Board, currently held by Scott Mobley, and launched a contested proxy solicitation campaign to support Mr. Copperud's election. The Board seat occupied by Mr. Mobley is the only seat up for election this year, as Noble Roman's maintains a "staggered board"—a corporate governance tactic commonly viewed as unfriendly to shareholders because it can be used to entrench an incumbent board, depressing shareholder value.[2]

4.      The Company's Definitive Proxy Statement omits key components of executive compensation for Scott Mobley and his father, Paul Mobley, that SEC regulations require to be disclosed. Thus, the Company's proxy statement violated Section 14(a) of the Exchange Act.

5.      Even with the Company's materially incomplete proxy statement disclosures, as a result of BT Brands' contested proxy solicitation, Mr. Copperud has received proxy voting authority for approximately 10,194,885 shares of the Company's 22,215,512 outstanding shares, and Mr. Mobley has received such authority for approximately 2,851,046 shares. Even when Paul Mobley's and Scott Mobley's combined 2,938,946 beneficially owned shares are added, **Mr. Copperud leads Mr. Mobley by 4,404,893 votes.**

6.      On June 27, 2023—after acknowledging BT Brands' and Mr. Copperud's share ownership, after including Mr. Copperud on both its preliminary and definitive proxy statements as a properly nominated candidate for director, and when proxy vote tallies showed Mr. Copperud's likely victory—**the Company retroactively declared Mr. Copperud ineligible for election as a director**.

---

[2] *See, e.g.*, Lucian A. Bebchuk & Alma Cohen, *The Costs of Entrenched Boards*, 78 J. OF FIN. ECON. 409 (2005) ("[S]taggered boards bring about, and [do] not merely reflect, a reduced firm value.").

7.      The purported basis for this action was that BT Brands and Mr. Copperud—like most stockholders in the United States, including the owners of approximately 93% of the Company's outstanding shares of common stock—beneficially owned their stock and were holding their shares in "street name" (that is, in brokerage accounts) and thus were not shareholders of record.[3]

8.      This rationale is patently pretextual. The Company knew since February 2023 that BT Brands and Mr. Copperud beneficially owned their shares, discussed that ownership in investor conference calls and emails, included Mr. Copperud as an authorized candidate in five proxy filings with the SEC, and knew well before June 5 that, though together they beneficially owned approximately 8.46% of the Company's stock, neither BT Brands nor Mr. Copperud were listed as shareholders of record in the Company's records. Yet, the Directors strategically delayed taking the position that Mr. Copperud was ineligible for election until nine days before the Annual Meeting, when it was clear that Mr. Copperud would defeat Mr. Mobley and precluding any opportunity for BT Brands address this deficiency.

9.      The Directors' real rationale was to entrench the existing corporate leadership structure, which is responsible for a precipitous decline in the Company's performance, the stock

---

[3] According to the SEC:

> Many investors today hold securities in street name with a broker-dealer. With street name registration, the securities you purchase are registered on the issuer's books in the name of an intermediary (such as your broker-dealer, a clearing agency, or a nominee affiliated with the broker-dealer or clearing agency), but your broker-dealer will maintain records showing you as the real or "beneficial" owner. Many brokerage firms will put your securities into street name unless you give them specific instructions that you want to hold your securities in your own name in registered owner form.

SEC Office of Inv. Educ. and Advoc. & Fin. Reg. Auth. (FINRA), *Investor Bulletin: Holding Your Securities*, U.S. Sec. & Exch. Comm'n (July 12, 2023), https://www.sec.gov/about/reports-publications/investor-publications/holding-your-securities-get-the-facts.

DocuSign Envelope ID: B0D58726-F8F4-4848-89DE-9C030C5B0BC3

price, and in shareholders' equity, while continuing to improperly enrich the Directors and officers responsible for this poor performance.

10.     Against this backdrop, after failing to achieve a quorum (a majority of the Company's outstanding shares entitled to vote at the meeting, represented in person or by proxy) comprising only proxy votes for Mr. Mobley (and refusing to count the plurality of proxy votes cast for Mr. Copperud), the Company postponed the Annual Meeting to August 10, 2023. Based on the current vote totals, it appears that the rescheduled meeting will again fail to reach a quorum consisting only of Mobley supporters and will not be convened unless BT Brands and supporters of its nominee cast votes at the meeting. In that case, the Company can take advantage of a clause in its Bylaws allowing a director to remain in office until "the successor to such director shall be elected and qualified." **That is, the Company will simply leave Mr. Mobley in place and ignore the expressed will of its shareholders.**

11.     These actions violate federal securities law, Indiana law, and the Directors' fiduciary duties to BT Brands and Mr. Copperud (as well as all other shareholders), and disenfranchise the owners of the Company by thwarting the expressed desire of a majority of the Company's shareholders who had proxies voting in favor of Mr. Copperud and against Mr. Mobley for the open Board seat.

12.     Accordingly, BT Brands and Mr. Copperud bring this action to (i) require Noble Roman's to take corrective action and submit corrected SEC filings that comply with the SEC's disclosure rules in connection with the shareholder votes for the open Board seat; (ii) enforce the fiduciary duties that the Directors owed to them as owners of the Company; and (iii) compel the Company to hold an annual meeting with Mr. Copperud included as a candidate for election.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the

state-law claims. 28 U.S.C. § 1367(a). Venue is proper in this district. 28 U.S.C. § 1391(b)(2).

## PARTIES

14.     Plaintiff BT Brands, Inc. is a publicly traded (NASDAQ: BTBD) Wyoming

corporation with its principal place of business in North Dakota. BT Brands owns and operates

restaurants in the eastern two-thirds of the United States. BT Brands beneficially owns an

aggregate of 1,500,724 shares of the Company's common stock, equal to approximately 6.75%

of the Company's outstanding shares.

15.     Plaintiff Gary Copperud is a citizen and domiciliary of Utah. Mr. Copperud's

principal occupation is serving as the CEO and a Director of BT Brands. Mr. Copperud

beneficially owns or controls an aggregate of 379,176 shares of the Company's common stock

(which includes 203,145 shares of common stock owned by Mr. Copperud's wife, over which

shares Mr. Copperud exercises voting power). The shares of common stock beneficially owned

and controlled by the Copperuds equal approximately 1.71% of Company's outstanding shares.

16.     Defendant Noble Roman's Inc. is a publicly traded (OTCQB: NROM) Indiana

corporation with its principal place of business in Indiana. The Company franchises and licenses

Noble Roman's Pizza and Noble Roman's Craft Pizza & Pub locations in Indianapolis and

elsewhere. Since 2015, under the Mobleys' leadership and the Directors' control:

- The Company's stock price has declined from $2.14 to $0.20;

- Shareholders' equity has fallen from $14.9 million to under $1.9 million at year end
2022;

- Outstanding debt has increased from $2.7 million to $8.9 million, largely to fund excessive compensation to the Mobley family;

- Paul and Scott Mobley have been paid approximately $5.9 million in disclosed compensation—nearly 40% of the decline in shareholders' equity;

- Employment agreements with the Mobleys commit over $7.47 million in future cash compensation, exceeding the Company's book value and imperiling its survival; and

- The Directors, without shareholder approval, have made stock awards of approximately 21% of the Company's outstanding shares to management, directors, and employees.

17.     Defendant Paul W. Mobley is, based upon publicly available information, a citizen and domiciliary of Indiana. Mr. Mobley is the Company's Executive Chairman and C.F.O., and a member of its Board. Since 2015, Mr. Mobley has been paid at least $2,420,750 in disclosed compensation. Additionally, 82 year old Mr. Mobley (or his designee) is the beneficiary of a Company-paid life insurance policy with a total face value estimated to be as much as $3.25 million, and, on information and belief, receives undisclosed Company-paid perquisites with a cash value well exceeding the $10,000 disclosure threshold.

18.     Defendant A. Scott Mobley is, based on publicly available information, a citizen and domiciliary of Indiana. Mr. Mobley is the Company's President and C.E.O., and a member of its Board. Since 2015, Mr. Mobley has been paid at least $3,508,656 in disclosed compensation. Additionally, Mr. Mobley (or his designee) is the beneficiary of a Company-paid life insurance policy with a total face value estimated to exceed $2 million and, on information and belief, receives undisclosed Company-paid perquisites with a cash value exceeding the $10,000 disclosure threshold provided under SEC disclosure rules.

19.     Defendant Douglas H. Coape-Arnold is, based on publicly available information, a citizen and domiciliary of New York. Mr. Coape-Arnold is one of the Company's Directors, a position he has held since approximately 2003. In that time, he has received more than $750,000

in consulting and director fees. Mr. Coape-Arnold does not own any shares, but has 615,000 options granted by the board without shareholder approval.

20.     Defendant Marcel Herbst is, based on publicly available information, a citizen and domiciliary of Illinois. Mr. Herbst is one of the Company's Directors, a position he has held since approximately 2017. In that time, he has received more than $100,000 in Director fees.

21.     Defendant William Wildman is, based on publicly available information, a citizen and domiciliary of Indiana. Mr. Wildman is one of the Company's Directors.

## FACTUAL ALLEGATIONS

### BT Brands and Mr. Copperud Acquire Significant Holdings of Company Stock, and BT Brands Repeatedly Offers the Company Financing at Rates Far More Favorable Than Its Existing Financing

22.     On November 28, 2022, BT Brands and Mr. Copperud reported through a required public disclosure that Mr. Copperud beneficially owned 176,031 shares of the Company's common stock (comprising 0.792% of the Company's then-outstanding 22,215,512 shares), and that BT Brands beneficially owned 972,951 shares, comprising 4.38% of the Company's then-outstanding shares *See* BT Brands, Inc. & Gary Copperud, Statement of Acquisition of Beneficial Ownership (Schedule 13D) (Nov. 28, 2022),

https://www.sec.gov/Archives/edgar/data/709005/000147793222008910/btbd_sc13d.htm.

23.     In January 2023, BT Brands sent two letters to the Company's Directors offering to assist Noble Roman's in resolving its rapidly deteriorating financial situation. True and correct copy of these letters are attached as Exhibits A and B. In the first letter, BT Brands noted that its "ownership of Noble Roman's, [which] when combined with shares owned by our CEO, is more than 5% of the outstanding common shares." Ex. A at 1.

DocuSign Envelope ID: B0D58726-F8F4-4848-89DE-9C030C5B8BC3

### *The Company Prepares for the Annual Meeting by Obtaining a List of Beneficial Owners of its Common Stock, Including BT Brands and Mr. Copperud*

24.     On or about February 10, 2023, the Company contacted Broadridge Financial Solutions, Inc. ("Broadridge"), a processing agent that, among other things, coordinates proxy communications between issuers of securities and beneficial owners of shares held in street name by most brokers in the United States.

25.     Broadridge "is essentially the sole central agent providing 'investor communications, document management and proxy processing services' in the United States." Alan L. Beller & Janet L. Fisher, *The OBO/NOBO Distinction in Beneficial Ownership: Implications for Shareholder Communications and Voting* at 16, COUNCIL OF INSTITUTIONAL INVESTORS (Feb. 2010), https://www.sec.gov/comments/s7-14-10/s71410-22.pdf. The Company requested from Broadridge a list of "non-objecting beneficial owners"—*i.e.*, a list of beneficial owners of shares who do not object to their identities being disclosed to the issuer of the securities (a "NOBO List"). As Beller and Fisher explain:

> To enable direct communication, brokers and banks must provide companies with a list of NOBOs upon request at any time. Most brokers and banks delegate this responsibility to an agent, in almost all cases Broadridge Financial Solutions Inc. (Broadridge), the leading provider of U.S. outsourcing services regarding communications, document management and processing in connection with the proxy procedure. Broadridge provides a single list of all NOBOs to the company in a standardized format. The NOBO list includes the name, address and securities position for each NOBO. Because Broadridge does not disclose the identity of a NOBO's broker or bank intermediary, relying on Broadridge to provide the NOBO list allows brokers and banks to preserve the confidentiality of their customer lists from each other and from the company.

*Id.* at 7 (footnotes omitted).

26.     On information and belief (so alleged because, despite Plaintiffs' rightful request that the Company provide them the NOBO List, as detailed below in paragraph 42, the Company failed to do so and claimed it did not have the list) the NOBO List that Broadridge provided to

DocuSign Envelope ID: B0D58726-F8F4-4848-89DE-9C030C5B0BC3

the Company on or about February 10, 2023 identified both BT Brands and Mr. Copperud as

beneficial owners of the Company's stock—*i.e.*, not "registered owners."

### BT Brands Continues Its Efforts to Help the Company Lower Its Financing Costs

27.     BT Brands followed up again with respect to its financing offer in a February 13,

2023 letter (attached as Exhibit C). Paul Mobley declined the offer by email on February 20.

28.     BT Brands and Mr. Copperud amended their Schedule 13D filing on February 24,

2023, updating Mr. Copperud's reported percentage of ownership (but not the number of

beneficially owned shares) and stating, among other things, that they "expect[ed] to pursue the

removal of the 'staggered' Board provision of the Company's bylaws and to put forth one or

more nominees for election to [the] Board of Directors." BT Brands & Gary Copperud,

(Amended) Statement of Acquisition of Beneficial Ownership (Schedule 13D) (Feb. 24, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147779323001227/btbd_sc13da.htm.

29.     On March 3, 2023, BT Brands' counsel sent a request to inspect certain of the

Company's corporate records pursuant to Indiana Code Sections 23-1-52-2(a) and (b). A true and

correct copy of this request is attached as Exhibit D.

30.     The Company responded to BT Brands' shareholder records request via March

14, 2023 letter from its counsel, a true and correct copy of which is attached as Exhibit E. With

its letter, the Company produced certain documents pursuant to Indiana Code Section 23-1-52-

2(a), which provides a right for "a shareholder of a corporation" to inspect and copy certain

corporate records. Ex. E at 1. However, the Company refused BT Brands' request for documents

pursuant to Indiana Code Section 23-1-52-2(b), which provides "[a] shareholder of a

corporation" limited rights to inspect certain other corporate records. Ex. E at 1. Notably, the

Company's rationale for refusing BT Brands' request was not the manner in which BT Brands

holds its shares.

31.     The Company filed its 2022 annual report on April 13, 2023. Noble Roman's, Inc.

Annual Report (Form 10-K) (Apr. 13, 2023),

https://www.sec.gov/ix?doc=/Archives/edgar/data/709005/000165495423004699/btbd_10k.htm.

The Company's Form 10 K informed the SEC that "as of March 1, 2023, there were

approximately 212 holders of record of the Company's Common Stock." *Id.* at 14.

### BT Brands Notifies the Company of Its Intent to Nominate Mr. Copperud, and the Company Repeatedly Acknowledges the Forthcoming Nomination

32.     On or about April 14, 2023, BT Brands sent the Company "notice of its intent to

nominate Gary Copperud for election to the Board of Directors" of the Company at the July 6

Annual Meeting. A true and correct copy of this notice is attached as Exhibit F. In its notice, BT

Brands stated (inaccurately, it turns out) that "it is the holder of record of 1,421,647 shares" of

the Company's common stock, and that "Mr. Copperud, the chief executive officer and a

member of the board of Directors of [BT Brands], owns 379,176 shares" of the Company's

common stock, "which includes 203,145 shares of common stock owned by Sally Copperud, Mr.

Copperud's wife, over which Mr. Copperud exercises beneficial control." *Id*.

33.     On April 25, 2023, BT Brands wrote to the Company regarding its annual report.

A true and correct copy of this letter is attached as Exhibit G. In its letter, BT Brands addressed

the Company's and Directors' failure to timely disclose the amendment of the Company's senior

secured promissory note with Corbel Capital Partners SBIC, L.P. (the "Corbel Note[4]"), in

violation of SEC disclosure regulations. Ex. G.

---

[4] The Company's amendment of the Corbel Note (more than doubling the monthly required payments) was a reportable event under Form 8-K Item 2.03 ("Creation of a Direct Financial

DocuSign Envelope ID: B9D258726-F8F4-4948-B9BE-9C020C5B9BC3

34.     On April 26, 2023, Mr. Copperud filed a report with the SEC, noting that he held sole voting power with respect to 379,176 shares of the Company's outstanding common stock (including Ms. Copperud's 203,145 shares), comprising 1.71% of the Company's then-outstanding 22,215,512 shares. *See* Gary Copperud, Statement of Acquisition of Beneficial Ownership (Schedule 13D) (Apr. 26, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223002888/btbd_sc13da.htm.

35.     The Company held an earnings call on May 11, 2023. After the Company's prepared presentation, the Company took questions, many of which were focused on BT Brands and the financing it had offered.[5]

36.     On May 16, 2023, Paul Mobley emailed some shareholders about the earnings call, noting that "BT Brands had acquired significant holdings in our stock," and launched a lengthy attack of BT Brands' nomination of Mr. Copperud for the open Board seat:

> After these three attempts [to provide the Company financing on more favorable terms] failed the next event that transpired was BT Brands sent a notice to Noble Roman's that they intended to nominate Gary Copperud, one of the principals in BT Brands, to the Class III director position to replace Scott Mobley, who as you know is the President and CEO of Noble Roman's with lots of years of experience and expertise in Noble Roman's.
>
> ….

---

Obligation or an Obligation of an Off-Balance Sheet Arrangement of a Registrant") or Item 2.04 ("Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement"). See 15 U.S.C. § 78m(l).  Indeed, the Company reported the Corbel Note agreement as a "Material Definitive Agreement." See Noble Roman's, Inc. Current Report (Form 8-K) (Feb. 12, 2020), https://www.sec.gov/Archives/edgar/data/709005/000165495420001375/nrom_8k.htm.

As noted in BT Brands' April 25 letter, this event was not disclosed in a Form 8-K filing, and was not disclosed in the Company's November 9, 2022 Quarterly Report.

[5] The Company's "Investor Relations" website includes a transcript of the earnings call. *See Earnings Call Trans.*, Noble Roman's, Inc. (May 11, 2023), https://www.nrom.info/investor-resources. Tellingly, the transcript does not include the shareholders' questions or the Company's answers to those questions.

> I hope that you will apply your persuasion and influence with other shareholders to oppose the election of Gary Copperud to the board of directors and support the unanimous consent of all existing board members to elect Scott Mobley to another term as director of the company.

A true and correct copy of this email, as received by BT Brands, is attached as Exhibit H (redacted to omit shareholder names and Mr. Mobley's email address).

37.     On May 23, 2023, BT Brands wrote to "seek[] the consent of Scott Mobley to be named as a nominee in the [BT Brands] proxy statement," as required under Exchange Act rules. A true and correct copy of this May 23 letter is attached as Exhibit I. The Company responded to BT Brands' request on May 26, stating that Mr. Mobley could "be named as [a nominee] in a proxy statement to be filed by BTB without Mr. Mobley providing any further consent." The Company did not object to BT Brands' filing a proxy statement in support of Mr. Copperud's candidacy. A true and correct copy of the Company's May 26 letter is attached as Exhibit J.

38.     On May 25, 2023, the Company filed its Preliminary Proxy Statement. In it, the Company:

- Noted that "BT Brands, Inc. ('BT Brands') has notified the Company that it intends to nominate Gary Copperud for election as a Class III Director at the annual meeting in opposition" to Scott Mobley.

- Stated, with respect to "[v]oting rights and solicitation of proxies," that "BT Brands has indicated its intent to nominate Gary Copperud also for election as a Class III Director. Therefore, and assuming BT Brands actually nominates Mr. Copperud for election at the annual meeting [and assuming a quorum], the nominee who receives the greatest number of votes 'FOR' his election will be elected."

- Noted that "BT Brands, Inc. and Garry Copperud" beneficially owned 1,437,454 of the Company's 22,215,512 shares of common stock outstanding (6.47%).

Noble Roman's, Inc. (Preliminary) Proxy Statement (Schedule 14A) (May 25, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423007185/nrom_pre14a.htm.

DocuSign Envelope ID: B9D258726-F8F4-4948-89BE-9C020C5B9BC3

39.     The following day (May 26, 2023) the Company filed its Proxy Card, which included Mr. Copperud as "BT Brands, INC. Nominee OPPOSED By the Company," and solicited votes to "[a]pprove on an advisory basis the compensation of the Company's named executive officers as disclosed in the Proxy Statement pursuant to Item 402 of Regulation S-K." Noble Roman's, Inc. Definitive Additional Materials (Schedule 14A) (May 26, 2023), https://www.sec.gov/Archives/edgar/data/709005/000165549423007268/nrom_defa14a.htm.

40.     On June 1, 2023, BT Brands filed its Preliminary Proxy Statement, noting its forthcoming nomination of Mr. Copperud. BT Brands, Inc. (Preliminary) Proxy Statement (Schedule 14A) (June 1, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223004160/btb_prec14a.htm.

41.     On June 5, 2023, BT Brands wrote to the Company, requesting "the stockholders list and non-objecting beneficial owners list[.]" A true and correct copy of this letter is attached as Exhibit K. In its letter, BT Brands also pointed out deficiencies in the Company's preliminary proxy statement related to the compensation paid to the Mobleys and that other statements might lead to shareholder confusion. *See* Ex. K.

42.     On June 9, through counsel, the Company responded to BT Brands' June 5 letter. A true and correct copy of this letter is attached as Exhibit L. With the letter, counsel enclosed "a copy of the registered stockholders list for the Company as of June 5, 2023[.]" Of particular note, the registered stockholders list did not include BT Brands or Mr. Copperud. Thus, the Company knew at the beginning of its proxy campaign that, though BT Brands beneficially owned significant holdings of the Company's common stock, it was not listed as a registered stockholder. Additionally, counsel wrote that "the Company does not currently have in its possession a non-objecting beneficial owners list." Ex. L. On information and belief, that is

incorrect; the Company requested and received a NOBO list on or about February 10, 2023. *See supra* ¶ 28. Finally, counsel wrote that "[t]he Company believes its preliminary proxy statement and Annual Report on Form 10-K for the year ended December 31, 2022 have been prepared and filed in accordance with applicable law such that no response is necessary to the other requests made in the [June 5] BTB letter." Ex. L. That too was incorrect. *See infra* ¶¶ 47-57.

43.     On June 12, the Company amended its Preliminary Proxy Statement, again noting that "BT Brands has indicated its intent to nominate Gary Copperud also for election as a Class III Director. Therefore …, the nominee who receives the greatest number of votes 'FOR' his election will be elected." Noble Roman's, Inc. (Preliminary) Proxy Statement (Schedule 14A) (June 12, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423007877/nrom_prec14a.htm.

44.     On June 13, 2023, BT Brands filed a revised Preliminary Proxy Statement. *See* BT Brands, Inc. (Preliminary) Proxy Statement (Schedule 14A) (June 13, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223004515/btb_prrn14a.htm.

45.     On June 15, BT Brands filed an amended Preliminary Proxy Statement. In it, BT Brands stated, in part:

> [T]he Company's financial statements demonstrate that the single largest contributor to the erosion of shareholder equity since 2014 has been the aggregate salaries paid to the Company's top two executives, comprising Scott Mobley and Paul Mobley, Scott Mobley's father, who serves as Executive Chairman of the Board, Chief Financial Officer and a Class II Director of the Company ("**Paul Mobley**"). Since 2014, excluding the value attributable to options granted, the Company has paid aggregate cash compensation of $5,929,406 to the Mobleys, an amount approximately equal to 45% of the total reduction in shareholders' equity over the last eight years. In addition to their base salary, the Mobleys have been receiving stock options over the terms of their respective employment agreements. As of December 31, 2022, Scott Mobley owns options to purchase 1,198,334 shares of Common Stock at prices ranging from $0.22 to $1.00 and Paul Mobley owns options to purchase 1,703,333 shares of Common Stock at prices ranging from $0.22 to $1.00. The 2,901,667 options granted to the Mobleys

represents more than 12% of the outstanding shares of Common Stock as of May 10, 2023 and over 54% of the total number of options granted by the Company. During this period, the Company's total debt increased 133% from $3.9 million at the end of 2014 to approximately $9 million at the end of 2022. As further evidence of the degradation of the Company's financial position, it is noted that at December 31, 2022, debt represented 480% of equity compared to total debt representing just 38% of equity at the time Scott Mobley became CEO in 2014.

BT Brands, Inc. (Preliminary) Proxy Statement (Schedule 14A) (June 15, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223004606/btb_prrn14a.htm.

46.     Also on June 15, the Company filed another revised Preliminary Proxy Statement, again noting that "BT Brands has indicated its intent to nominate Gary Copperud also for election as a Class III Director. Therefore and assuming BT Brands actually nominates Mr. Copperud for election at the annual meeting, the nominee who receives the greatest number of votes 'FOR' his election will be elected." Noble Roman's, Inc. (Preliminary) Proxy Statement (Schedule 14A) (June 15, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008056/nrom_prer14a.htm.

### *The Company Violates Exchange Act Section 14(a) By Filing a Definitive Proxy Statement Omitting Information that SEC Rules Required It to Include*

47.     On June 16, 2023, the Company filed its Definitive Proxy Statement. Yet again, the Company noted that BT Brands would be nominating Mr. Copperud as a Director in opposition to Mr. Mobley, and stated that "[t]he Board, including all of its independent Directors, strongly urges you **NOT** to sign or return any … proxy card sent to you by or on behalf of BT Brands." Noble Roman's, Inc. Definitive Proxy Statement (Schedule 14A) (June 16, 2023) (emphasis in original) (the "NROM Definitive Proxy"),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008093/nrom_defc14a.htm.

48.     Despite being notified on June 5 of deficiencies in its Preliminary Proxy Statement, *see supra* ¶ 41, the Company repeated them in its Definitive Proxy Statement.

49.     Paul Mobley signed the NROM Definitive Proxy in his capacity as the Company's Executive Chairman and Chief Financial Officer. NROM Definitive Proxy at 22.

50.     Pursuant to Exchange Act Section 14(a), the information that companies must disclose in any proxy statement is specified in 17 C.F.R. § 240.14a-101. Under Item 8(a) of Regulation 240.14a-101, "if action is to be taken with regard to … [t]he election of Directors," the registrant must "[f]urnish the information required by Item 402 of Regulation S-K (§ 229.402 of this chapter)[.]" 17 C.F.R. § 240.14a-101.

51.     The SEC promulgated Item 402 of Regulation S-K pursuant to 15 U.S.C. § 78n-1(a), which requires that registrants conduct a non-binding shareholder vote on executive compensation at least once every three years—a "say-on-pay" vote. Item 402 of Regulation S-K requires registrants to "[d]iscuss the compensation awarded to, earned by, or paid to the named executive officers. The discussion shall explain all material elements of the registrant's compensation of the named executive officers." 17 C.F.R. § 229.402(b)(1). The regulation specifies seven pieces of data that "shall [be] described[d]" in the disclosure. *Id.*

52.     Additionally, certain other data are to be presented in a "Summary Compensation Table" with specified columns covering common components of compensation. 17 C.F.R. § 229.402(c)(1). "All other compensation for the covered fiscal year that the registrant could not properly report in any other column of the Summary Compensation Table" must be included, whether in a footnote or otherwise. 17 C.F.R. § 229.402(c)(2)(ix). Among other things, the registrant must disclose "[p]erquisites and other personal benefits, or property, unless the aggregate amount of such compensation is less than $10,000," *id.* § 229.402(c)(2)(ix)(A), and "[t]he dollar value of any insurance premiums paid by, or on behalf of, the registrant during the

DocuSign Envelope ID: B9D258726-F8F1-4948-89BE-9C020C5B9BC3

covered fiscal year with respect to life insurance for the benefit of a named executive officer," *id.* § 229.402(c)(ix)(F).

53.      The NROM Definitive Proxy included a "Summary Compensation Table for 2021 and 2022," purporting to "set[] forth the cash and non-cash competition awarded to or earned by the Executive Chairman of the Board and Chief Financial Officer, the Chief Executive Office, President and Secretary, and the one other highest paid executive officer of the Company." It also described Paul Mobley's and Scott Mobley's compensation as follows:

> Paul W. Mobley [Executive Chairman and C.F.O.] has an employment agreement with the Company which: (A) fixes his base compensation at $650,000 per year for 2022 (although Mr. Mobley voluntarily reduced his base compensation to $315,000 for 2021 and $330,750 for 2022 and pursuant to an agreement entered into in connection with the Corbel financing in 2020 Mr. Mobley agreed to limit his salary in future years to a 5% per annum increase); (B) provides for reimbursement of travel and other expenses incurred in connection with his employment, **including the furnishing of an automobile and health and accident insurance** similar to that provided other employees; and (C) **provides life insurance in an amount related to his base salary**. The initial term of the agreement is seven years and the term automatically renews each year for a seven-year period unless the Board of Directors takes specific action to not renew. The agreement is terminable by the Company for cause as defined in the agreement. The agreement does not provide for any benefits payable as a result of a change of control of the Company.

> A. Scott Mobley [President and C.E.O.] has an employment agreement with the Company which: (A) fixes his base compensation at $584,060 per year for 2022 (although Mr. Mobley voluntarily reduced his base compensation to $461,506 in 2021 and $489,078 in 2022) and pursuant to an agreement entered into in conjunction with the Corbel financing in 2020 Mr. Mobley agreed to limit his salary in future years to a 5% per annum increase); (B) provides for reimbursement of travel and other expenses incurred in connection with his employment, **including the furnishing of an automobile and health and accident insurance** similar to that provided other employees; and (C) provides **life insurance in an amount related to his base salary**. The initial term of the agreement is five years and the term automatically renews each year for a five-year prior unless the Board of Directors takes specific action to not renew. The agreement is terminable by the Company for cause as defined in the agreement. The agreement does not provide for any benefits payable as a result of a change of control of the Company.

DocuSign Envelope ID: B9D258726-F8F4-4948-89BE-9C020C5B9BC3

NROM Definitive Proxy at 15 (emphasis added).

54.     On its face, the NROM Definitive Proxy fails to provide "[t]he dollar value of any insurance premiums paid by, or on behalf of," the Company with respect to the Mobleys' life insurance. 17 C.F.R. § 229.402(c)(2)(ix)(F).

55.     Additionally, though the NROM Definitive Proxy says that both Mobleys' salaries were "voluntarily reduced," it does not specify whether the life insurance "amount" is tied to the base salary in each Mobley's employment agreement or to the "voluntarily reduced" amount. According to the Mobleys' employment agreements, the Company was obligated to provide Paul Mobley "with a life insurance policy on the life of Mobley in the amount of five (5) times his base annual salary[.]" *See* Noble Roman's Inc. Annual Report (Form 10-K), Ex. 10-1, https://www.sec.gov/Archives/edgar/data/709005/000092627406000118/0000926274-06-000118-index.htm.[6]

56.     The Company's failures to disclose the Mobleys' life insurance premiums were not trivial, technical omissions—they are material omissions, especially with respect to Paul Mobley, who is 82 years old. *See* NROM Definitive Proxy at 15. A policy for five times his base salary ($650,000) has a face value of $3,250,000; a policy for five times his "voluntarily reduced" 2022 salary ($330,750) has a face value of $1,653,750. Life insurance options are very limited (and very expensive) for seniors over 80. Disclosure of exactly how much the Company's shareholders are paying for the Mobleys' coverage would alter the "total mix" of information available. That is why the SEC requires this information to be disclosed.

---

[6] While "[i]nformation may be incorporated by reference" in a proxy statement, 17 C.F.R. § 2240.14a-101(D), the NROM Definitive Proxy does not purport to incorporate any documents by reference. But even if the Mobleys' employment agreements had been incorporated by reference, the NROM Definitive Proxy would still be facially deficient in not providing the "dollar value" of the premiums the Company paid for their life insurance. 17 C.F.R. § 229.402(c)(2)(ix)(F).

57.     Additionally, each of the Mobleys is "furnish[ed] … an automobile and health and accident insurance[.]" NROM Definitive Proxy at 15. The cash values of these perquisites almost certainly exceed $10,000 annually, and therefore was required to have been disclosed. 17 C.F.R. § 229.402(c)(2)(ix)(A). Like disclosure of the life insurance premiums, disclosure of this information would also alter the "total mix" of information available.

### *The Company Continues to Acknowledge Mr. Copperud's Forthcoming Nomination*

58.     BT Brands also filed its Definitive Proxy Statement on June 16, setting out in detail a "chronology of material events leading up to this proxy solicitation," including multiple attempts by BT Brands to engage with the Company and its Board. BT Brands, Inc. Definitive Proxy Statement (Schedule 14A) (June 16, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223004626/btb_defc14a.htm.

59.     Also on June 16, the Company made another attempt to rebut the detailed criticisms of the Company's Board and management in BT Brands' proxy statement. The Company argued that "[t]he BT Brands nominee," Mr. Copperud, "lack[ed] … key experience and perspective with the Company and is instead being nominated merely to provide BT Brands with additional leverage to pursue its financing proposal[.]" Noble Roman's, Inc. Definitive Additional Materials at 4 (Schedule 14A) (June 16, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008148/nrom_defa14a.htm.

60.     On June 22, 2023, the Company filed a "News Bulletin," stating what it described as "Basic Points in Support of Scott Mobley As Nominee for its Board of Directors," arguing in part that "[r]emoving the company's President & CEO from the Board could create significant internal staffing and morale problems …. It is not clear to the Board that the services of Scott Mobley can be retained as an operating officer of the company if he is not also a full member of

the Board since he has indicated he strongly believes in the necessity of continuity between policy participation and implementation at the CEO level[.]" Noble Roman's, Inc. Definitive Additional Materials at 2 (Schedule 14A) (June 22, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008249/nrom_defa14a.htm.

### BT Brands and the Company Begin to Receive Proxy Returns Showing Mr. Copperud's Likely Electoral Victory

61.     On June 23, the Company wrote that "[a]s the July 6, 2023 annual meeting of shareholders approaches, we urge you to support the company's Director nominee, A. Scott Mobley," and arguing that "[p]ermitting a contrarian entity like BT Brands to have a seat on the company's board of Directors could easily have significant negative consequences[.]" Noble Roman's, Inc. Definitive Additional Materials at 4 (Schedule 14A) (June 23, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008315/nrom_defa14a.htm.

62.     The same day (June 23), BT Brands filed its own letter to the shareholders (dated June 19), noting that during Mr. Mobley's term as CEO, the Company's "[s]hare price declined from $2.14 to 20 cents"; "[s]hareholders' equity fell from $14.9 million to under $1.9 million"; "[d]ebt increased from $2.7 million to $8.9 million"; "[e]ight-year Compensation paid to Mobleys totaled approximately $5.9 million"; and the Mobleys' employment agreements "commit[ted] over $5.9 million in future cash compensation." BT Brands concluded, "[i]n light of this troubling performance, it is critical to elect Mr. Copperud to the Board of Directors, bringing the Board a fresh perspective and a commitment to enhancing shareholder value." BT Brands, Inc. Definitive Additional Materials at 2 (Schedule 14A) (June 23, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223004743/btb_dfan14a.htm.

63.     Three days later, on June 26, the Company's counsel (the same attorney who on June 9 had sent the list of registered shareholders, which did not include BT Brands or Mr.

Copperud) sent BT Brands a letter informing it of the Company's intent to ignore the will of the majority of shareholders submitting proxies for the meeting and disqualify Mr. Copperud's nomination. A true and correct copy of this letter is attached as Exhibit M.[7]

64.     Before its strategic *volte-face*, Noble Roman's had discussed its opposition to Mr. Copperud's candidacy in preliminary or definitive proxy filings with the SEC on May 25, May 26, June 12, June 16, June 16 (again), and June 23. *See supra* ¶¶ 38, 39, 43, 47, 59, 61. In none of those filings did the Company contest the effectiveness of Mr. Copperud's nomination. And the Company never objected to BT Brands' June 1, June 13, June 16, or June 23 preliminary and definitive proxy filings with the SEC. *See supra* ¶¶ 40, 44, 58, 62.

### *Without Authority, the Company Announces that*
### *It Has Disqualified BT Brands' Nomination of Mr. Copperud*

65.     On June 23, Mediant Communications, Inc. (another processing agent like Broadridge) made voting data for the proxy vote available to the Company upon its request. Affidavit of John Grau ("Grau Aff.") ¶ 12. Three days later, on June 26, Mediant made the same data available to BT Brands. *Id.* And on June 28, both the Company and BT Brands also began receiving twice-daily vote tallies from Broadridge. These data showed a trend that has continued to the date of this filing: that BT Brands received a plurality of proxies to vote shares (a) in favor of electing Mr. Copperud as director; and (b) against the requested advisory approval for the Mobleys' compensation. *Id.* ¶ 14.

---

[7] The Bylaws provision on which the Directors' *post hoc* rationalization is based states that "[n]ominations of persons for election as directions may be made by the Board or by any shareholder who is a shareholder of record at the time of giving the notice of nomination provided for in this Article II, Section 6 and who is entitled to vote in the election of directors." Bylaws Art. II, Sec. 6.

66. On June 27, the Company purported to disqualify Mr. Copperud's nomination, stating in an SEC filing:

> The Company has disqualified the purported nomination by BT Brands, Inc. ("BT Brands") of Gary Copperud for election to the Company's Board of Directors at the annual meeting. BT Brands purported to nominate Mr. Copperud for election. The Company recently determined, and has notified BT Brands, that BT Brands failed to comply with the requirements of the Company's by-laws for nominations of Director candidates. In particular, **according to the records maintained by the Company's transfer agent**, BT Brands was not a shareholder of record of the Company's common stock at the date it submitted its notice of intent to nominate Mr. Copperud or on the record date for the shareholders entitled to vote at the meeting. Such failures constitute separate grounds for disqualification of BT Brands' purported nomination under the Company's by-laws. Accordingly, BT Brands may not nominate Mr. Copperud at the annual meeting, and in accordance with the Company's by-laws, the Company will disregard all votes purported to be cast in favor of Mr. Copperud[.]

Noble Roman's, Inc. Definitive Additional Materials at 4 (Schedule 14A) (June 27, 2023)

https://www.sec.gov/Archives/edgar/data/709005/000165495423008472/nrom_defa14a.htm.

67. Companies facing contested proxy contests typically obtain from their transfer agents lists of shareholders of record immediately upon receiving notification that a shareholder intends to solicit competing proxies. Assuming that Noble Roman's followed that standard practice, it had known since April 14, 2023 (and potentially since February 10, 2023) that BT Brands and Mr. Copperud were not shareholders of record, but rather held their significant interests in street name. Yet, the Company chose not to take the position that this made BT Brands ineligible to nominate Mr. Copperud until nine days before the originally schedule Annual Meeting, when it would be too late for BT Brands to cure this purported deficiency. Had the Company notified BT Brands at the time the Notice of Nomination was submitted, that it would take the position it has taken, BT Brands would have had opportunity and ability to cure this alleged defect.

68.     BT Brands responded to the Company's purported disqualification the following day, writing on June 28 that the Company was "attempting to use a technical interpretation of its by-laws to exclude BT Brands' nominee" and avoid "a potentially crushing defeat in the upcoming shareholder vote" by disenfranchising its shareholders. BT Brands, Inc. Definitive Additional Materials at 4 (Schedule 14A) (June 28, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223004851/btb_dfan14a.htm.

69.     Later the same day, the Company filed an "Update on Disqualification of Purported Nomination by BT Brands, Inc.," attempting to justify its belated effort to stymie BT Brands' nomination. *See* Noble Roman's, Inc. Defin. Additional Materials at 4 (Schedule 14A) (June 28, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008520/nrom_defa14a.htm.

### *The Company Delays the Annual Meeting Because*
### *It Lacked a Quorum Supporting Mr. Mobley*

70.     On July 5, the Company postponed the Annual Meeting to August 10, purportedly "to allow adequate time for stockholders to return their proxies and for the proxies to be tabulated." Noble Roman's, Inc. Defin. Additional Materials at 4 (Schedule 14A) (July 5, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423008766/nrom_defa14a.htm.

71.     The data, however, show a different reason for the Company's action. On June 28 (the day that the Company filed its "Update on Disqualification"), Broadridge released preliminary vote tallies from the shareholders' returned proxy cards. Broadridge's data showed proxies had been returned showing instructions to vote 3,752,275 shares for Mr. Copperud, while Mr. Mobley had received proxy voting authority for only 1,616,715 shares. Grau Aff. ¶ 15. The Company could have, and likely did, obtain similar information from Mediant. **In other words,**

**Mr. Copperud was well ahead of Mr. Mobley in proxy votes when the Company purported to disqualify him.**

72.    According to the Company's December 18, 2009 Amended and Restated By-Laws of Noble Roman's, Inc. (Bylaws), a "majority of the votes entitled to be cast on a particular matter constitutes a quorum on that matter." Bylaws Art. II, Sec. 8(d).[8] "At each meeting of the shareholders, each outstanding share, regardless of class, is entitled to one (1) vote on each matter voted on at such meeting, except to the extent cumulative voting is allowed by the Articles of Incorporation." *Id*. Art. II, Sec. 8(a).[9] Thus, for purposes of the 2023 Annual Meeting, a quorum will comprise 11,107,757 shares (22,215,512 outstanding shares / 2 = 11,107,756 + 1 = 11,107,757).

73.    As reported in a letter to the Company's independent directors, by July 6 (the original Annual Meeting date), Mr. Copperud had received 9,688,159 proxy votes (43.61% of outstanding shares of common stock) to Mr. Mobley's 2,834,531 (12.76% of outstanding shares). Thus, the Company and BT Brands had received proxy voting authority for a combined 12,522,672 shares – well over the 11,107,757 quorum figure.[10]

---

[8] The Bylaws are available at
https://www.sec.gov/Archives/edgar/data/709005/000092627409000125/ex3-1.txt.

[9] The Company's September 21, 1972 initial Articles of Incorporation did not allow cumulative voting, and the October 7, 1982 Articles of Amendment confirmed that "[t]he holders of common stock do not have cumulative voting rights." The Articles of Incorporation have been amended six times following the 1982 Articles of Amendment, but none of these amendments allowed cumulative voting.

[10] It is likely that, through Mediant, the Company had advance indications of this lopsided vote total. Additionally, having received the NOBO List in February 2023, and the list of registered shareholders on or about June 6, the Company could have used (and likely did use) those resources to do that most companies in contested proxy contests do—whip votes and gauge expected results.

DocuSign Envelope ID: B9D258726-F8F4-4948-B9BE-9C020C5B9BC3

74.     Moreover, Directors are elected "by a plurality[11] of the votes cast with respect to the election of directors and the nominees receiving the greatest number of votes, up to the number of directors, shall be elected as directors." *Id.* Art. II, Sec. 5. Assuming that none of Paul Mobley's or Scott Mobley's beneficially owned shares had already been voted by proxy, their combined 6,590,613 beneficially owned shares would still have left Mr. Mobley millions of shares short of the plurality required by the Company's Bylaws for election as a director.

75.     **Thus, by the originally scheduled Annual Meeting date, the Company's shareholders had (a) provided proxy voting authority constituting more than the required minimum quorum number of shares for the Annual Meeting; and (b) expressed their overwhelming support for Mr. Copperud over Mr. Mobley, such that even the Mobleys' substantial share holdings could not have achieved a victory for Mr. Mobley.**

76.     Given these facts, it appears that the true reason for the Company's adjournment was to have a second meeting at which BT Brands would not participate, resulting in a failure to meet quorum—meaning that no directorial election could be held. In that case, the Company could take advantage of a clause in its Bylaws providing that "[t]he term of office of a director shall continue after the annual meeting at which it is to expire until the director's term of office ends … *or the successor to such director shall be elected and qualified.*" Bylaws Art. III, Sec. 3 (emphasis added). **In other words, if there is no election in 2023, the Company can simply ignore the expressed will of its shareholders and leave Mr. Mobley in office until the next annual meeting.**

---

[11] A "plurality" is "[t]he greatest number [of votes], regardless of whether it is a simple or an absolute majority." BLACK'S LAW DICTIONARY 1193 (8th ed. 2004).

77.    Also on July 5, BT Brands filed a press release, responding to the Company's attempt to justify its disqualification of Mr. Copperud. Among other things, BT Brands noted:

- "NROM has been aware and acknowledged in writing through its legal counsel and in conference calls that BT is a significant shareholder of NROM."

- "As management of NROM has been aware since February 2023, BT and Mr. Copperud own approximately 9% of the outstanding shares of NROM common stock, a fact transparent from Forms 13D and Form 3 filed by BT with the SEC."

- "NROM's delay in sending its recent deficiency letter to BT reeks of iniquity and objectively represents an attempt to disenfranchise [a majority] NROM's shareholders of their voice in managing the company. It is a clear attempt to gain an advantage when the shareholders most need representation on the board of Directors, given the dismal financial performance and plummeting stock prices over the last eight years."

- "The facts tell the story of a failure of the board of Directors of NROM to respect and abide by the will of the shareholders and may represent a material breach of the Directors' fiduciary duty of care to shareholders. In supporting management's position that the nomination is defective, the Directors are ignoring the voices of shareholders who elected them to protect and serve their interests in the face of management's desires."

BT Brands, Inc. Definitive Additional Materials at 2-3 (Schedule 14A) (July 5, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000147793223005025/btb_dfan14a.htm.

78.    On July 12, BT Brands wrote to the Company's three independent Directors (Messrs. Wildman, Coape-Arnold, and Herbst). A true and correct copy of BT Brands' letter is attached as Exhibit N. In the letter, BT Brands provided preliminary results for the upcoming shareholder vote (prepared by InvestorCom Shareholder Intelligence) showing that the voting shareholders overwhelmingly preferred Mr. Copperud to Mr. Mobley (by 9,688,159 votes to 2,834,531 votes, using the tally as of July 6). Ex. N at 5.

79.    BT Brands also wrote in its July 12 letter to the independent Directors that BT Brands' "preliminary review indicates the Company's 10-K disclosures may be deficient in

failing to disclose the amounts of Company-paid benefits such as Company-paid life and health insurance, car allowances and other reimbursement, which [are] part of the required disclosure included in Form 10-K in the Executive Compensation Disclosure table." *Id.* at 2.

80.     On July 20, the Directors responded, through counsel, to BT Brands' July 12 letter. A true and correct copy of the Board's response is attached as Exhibit O. In short, the Board flatly refused to consider the points that BT Brands raised:

> In view of the fact that the allegations and claims in your letter are entirely baseless and without merit and reflect a complete lack of effort to understand the Company or its business, the Board believes no substantive response is necessary or would be an appropriate use of the Company's resources or management's time and attention.

Ex. O.

81.     On July 27, the Company reiterated its intent to disregard the preliminary proxy voting results by filing a press release purporting to "remind[] shareholders that any purported nomination by BT Brands, Inc. ('BT Brands') for the election of a Director at the annual meeting has been disqualified by the Company in accordance with its by-laws. Accordingly, A. Scott Mobley is the only nominee for election at the annual meeting. Any vote claimed to be cast in favor of any other nominee will not be counted in accordance with the Company's by-laws." Noble Roman's, Inc. Definitive Additional Materials at 4 (Schedule 14A) (July 27, 2023), https://www.sec.gov/Archives/edgar/data/709005/000165495423009739/btb_defa14a.htm.

82.     When the Company filed its July 27 press release, preliminary vote tallies showed that Mr. Copperud had received proxy voting authority for 10,194,885 shares, while Mr. Mobley had received proxy authority to vote 2,851,046 shares. The Mobleys' combined 2,938,946 beneficially owned shares were still not nearly enough enough to put Mr. Mobley in the lead.

83.     As of August 1, Mr. Copperud had received proxy voting authority for 10,194,885

shares, while Mr. Mobley had received proxy authority to vote 2,851,046 shares. The Mobleys'

combined 2,938,946 beneficially owned shares are still not enough to elect Mr. Mobley.

## COUNT I – VIOLATION OF EXCHANGE ACT SECTION 14(a)
### Against Defendants Paul W. Mobley and Noble Roman's, Inc.

84.     BT Brands and Mr. Copperud incorporate by reference the allegations in

paragraphs 1-21 and 47-57 above.

85.     Section 14(a) of the Exchange Act provides, in part:

> It shall be unlawful for any person, by the use of the mails or by any means or
> instrumentality of interstate commerce or of any facility of a national securities
> exchange or otherwise, in contravention of such rules and regulations as the
> Commission may prescribe as necessary or appropriate in the public interest or for
> the protection of investors, to solicit or to permit the use of his name to solicit any
> proxy[.]

15 U.S.C. § 78n(a).

86.     Paul Mobley and Noble Roman's have violated Section 14(a) of the Exchange

Act by acting in contravention of the "rules and regulations" prescribed by the SEC.

87.     To wit, 17 C.F.R. § 240.14A-101, Item 8(a), and 17 C.F.R. § 299.402(b)(1)

require the Company to "describe all material elements of the registrant's compensation of the

named executive officers," and 17 C.F.R. §§ 229.402(c)(2)(ix)(A) and 229.402(c)(2)(ix)(F)

require the Company to disclose, respectively, the executive's compensation in the form of

"[p]erquisites and other personal benefits, or property, unless the aggregate amount of such

compensation is less than $10,000," and "[t]he dollar amount of any insurance premiums paid

by, or on behalf of, the registrant during the covered fiscal year with respect to life insurance for

the benefit of a named executive officer."

88.     The NROM Definitive Proxy does not disclose the dollar amount of the insurance premiums paid with respect to the Mobleys' life insurance, and does not disclose the value of their compensation in the form of perquisites.

89.     As such, the Company's shareholders do not have adequate information to determine whether to vote to "approve on an advisory basis the compensation of the Company's named executive officers[.]" NROM Definitive Proxy at 2.

90.     Plaintiffs will suffer irreparable injury unless Noble Roman's is enjoined from proceeding with the Annual Meeting without making the required corrective disclosures under Item 402 of Regulation S-K.

91.     To remedy or prevent these injuries, and to prevent future harm, injunctive relief is required as requested below.

### COUNT II – VIOLATION OF EXCHANGE ACT SECTION 20(a)
### Against Defendants A. Scott Mobley, Paul W. Mobley, Douglas H. Coape-Arnold, Marcel Herbst, and William Wildman

92.     BT Brands and Mr. Copperud incorporate by reference the allegations in paragraphs 1-21, 47-57, and 84-91 above.

93.     Section 20(a) of the Exchange Act provides, in part:

> Every person who, directly or indirectly, controls any person liable under any provision of this title [15 U.S.C. §§ 78a *et seq*.] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable …, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

94.     Each of Messrs. Scott Mobley, Paul Mobley, Coape-Arnold, Herbst, and Wildman (each a "Director"; together, the "Directors") acted as controlling persons of Noble Roman's Inc. within the meaning of Exchange Act Section 20(a). By virtue of their positions as

DocuSign Envelope ID: B9D58726-F8F4-4948-B9BE-9C020C5B9BC3

directors (and in the cases of Scott Mobley and Paul Mobley, Chief Executive Officer and Chief Financial Officer, respectively), and participation in and/or awareness of the Company's operations and/or intimate knowledge of the Definitive Proxy Statement signed by Paul Mobley and filed by the Company with the SEC and disseminated to the investing public, the Directors each had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the Definitive Proxy Statement, which violated Section 14(a) of the Exchange Act as alleged above.

95.    Each Director was provided with or had unlimited access to or copies of the Company's Definitive Proxy Statement, and other statements, alleged by Plaintiffs to violate Section 14(a) of the Exchange Act and had the ability to prevent the issuance of the Definitive Proxy Statement or cause the Definitive Proxy Statement to be corrected.

96.    In particular, each Director had direct and supervisory involvement in the operations of the Company and therefore is presumed to have had the power to control and influence, and were intimately involved with, (i) the decision to nominate Scott Mobley for re-election as a Class III director; and (ii) the executive compensation plan for which the Company is seeking advisory shareholder approval in connection with the Definitive Proxy Statement at the scheduled Annual Meeting of Shareholders.

97.    In addition, the Directors were each involved in negotiating, reviewing, and/or approving (i) the nomination of Scott Mobley for re-election as a Class III director; and (ii) the terms of the executive compensation plan.

98.    Further, the Definitive Proxy Statement represents that the Directors unanimously recommend that the Company's shareholders (i) re-elect Scott Mobley as a Class III director; and (ii) approve, on an advisory basis, the executive compensation plan. Thus, each Director was

DocuSign Envelope ID: B9D258726-F8F4-4948-89BE-9C020C5B9BC3

directly involved in the preparation and filing of the Definitive Proxy Statement, regardless of

which Company employee or agent actually filed the Definitive Proxy Statement.

99.     As alleged above, Noble Roman's Inc. and Paul Mobley violated Exchange Act

Section 14(a). As a direct result of the Company's and Paul Mobley's wrongful conduct,

Plaintiffs and all other shareholders of the Company have been deprived of material information

in connection with the upcoming Annual Meeting of Shareholders and the proposed transactions

to be approved by the Company's shareholders.

100.     By virtue of their positions as "controlling person[s]," the Directors are liable for

these direct violations pursuant to Exchange Act Section 20(a).

101.     Plaintiffs will suffer irreparable injury unless Noble Roman's is enjoined from

proceeding with the Annual Meeting without making the required corrective disclosures under

Item 402 of Regulation S-K.

102.     To remedy or prevent these injuries, and to prevent future irreparable harm,

injunctive relief is required as requested below.

### COUNT III: VIOLATION OF INDIANA CODE § 23-1-29-1(a)
### Against Defendant Noble Romans, Inc.

103.     BT Brands and Mr. Copperud incorporate by reference the allegations in

paragraphs 1-83 above.

104.     Indiana Code § 23-1-29(a) provides that "[a] corporation must hold a meeting of

the shareholders annually at a time stated in or fixed in accordance with the bylaws."

105.     The comment to Section 23-1-29(a) states, in part:

While subsection (a) requires a corporation to hold annual meetings, it does not
(unlike the corresponding provision of the GCA, IC 23-1-2-9(c)) specify a time
within which the meeting must be held. The relevant time period under the
[Indiana Business Corporation Law] is established by IC 23-1-29-3, which
authorizes any shareholder to apply for a court-ordered meeting if the annual

meeting is not held within the earlier of six months after the end of the
corporation's fiscal year or fifteen months after the last annual meeting. The 2009
amendment to this subsection is based on the RMA. **The primary function of a
corporation's shareholders at an annual meeting is to elect directors** and the
Commission determined that permitting shareholders to dispense with an annual
meeting if directors are elected by written consent is appropriate, provided that
where a corporation has determined to elect directors through cumulative voting
as permitted in IC 23-1-30-9, directors may not be elected by less than unanimous
consent.

(emphasis added).

106.    Indiana Code Section 23-1-29-3(a)(1) provides:

The circuit or superior court of the county where a corporation's principal office
(or, if none in Indiana, its registered office) is located may order a meeting to be
held and may fix the time and place of the meeting, which shall be conducted in
accordance with the corporation's articles of incorporation and bylaws … [o]n the
application of any shareholder of the corporation entitled to participate in an
annual meeting if an annual meeting was not held within the earlier of six (6)
months after the end of the corporation's fiscal year or fifteen (15) months after
its last annual meeting[.]

(emphasis added). Despite its reference to "[t]he circuit or superior court," this statute has been

enforced by this Court. *See Ipalco Enters. v. PSI Resources*, 1993 U.S. Dist. LEXIS 19805 (S.D.

Ind. June 18, 1993).

107.    The Company's Bylaws provide that:

An annual meeting of shareholders shall be held on such date and at such time as
may be determined by the Board of Directors and specified in the notice or
waivers of notice thereof. The failure to hold an annual meeting at the designated
time shall not affect the validity of any corporate action. Any and all business of
any nature or character may be transacted, and any action may be taken thereon,
at any annual meeting, except as otherwise provided by law or by these By-laws.

Bylaws, Art. II, Sec. 2.

108.    The Company's last fiscal year ended December 31, 2022. Bylaws, Art. I, Sec. 6

("The fiscal year of the Corporation shall begin at the beginning of the first day of January in

each year and end at the close of the last day of December next succeeding.").

DocuSign Envelope ID: B9D258726-F8F4-4948-89BE-9C020C5B9BC3

109.    The Company did not hold a meeting of the shareholders in the six months following the end of the Company's last fiscal year.

110.    The Company's Bylaws provide that "[a]t each meeting of the shareholders, each outstanding share, regardless of class, is entitled to one (1) vote on each matter voted at such meeting, except to the extent cumulative voting is allowed by the Articles of Incorporation. Only shares are entitled to vote." Bylaws, Art. II, Sec. 8. The Company's September 21, 1972 initial Articles of Incorporation did not allow cumulative voting, and the October 7, 1982 Articles of Amendment confirmed that "[t]he holders of common stock do not have cumulative voting rights." The Company's Articles of Incorporation have been amended six times following the 1982 Articles of Amendment, but none of these amendments allowed cumulative voting.

111.    The Company's Bylaws provide that "[a] shareholder may vote the shareholder's shares in person or by proxy." Bylaws, Art. II, Sec. 8(c)(1).

112.    Plaintiff BT Brands, Inc. beneficially owns an aggregate of 1,500,724 shares of the Company's common stock. BT Brands is entitled to vote these shares at the Annual Meeting.

113.    Plaintiff Gary Copperud beneficially owns or controls an aggregate of 379,176 shares of the Company's common stock (which includes 203,145 shares of common stock owned by Mr. Copperud's wife, over which shares Mr. Copperud exercises voting power). Mr. Copperud is entitled to vote these shares at the Annual Meeting.

114.    On or about July 5, 2023, despite the fact that the Company and BT Brands had by that date received proxy voting authority for a combined 12,522,672 shares (well over the 11,107,757 shares required to achieve quorum) and the Mobleys' strategic decision not to vote their 2,938,946 beneficially owned shares,  the Company postponed the Annual Meeting, previously scheduled to occur the following day (July 6), to August 10, purportedly "to allow

adequate time for stockholders to return their proxies and for the proxies to be tabulated." *See* Noble Roman's, Inc. Definitive Additional Materials at 4 (Schedule 14A) (July 5, 2023), https://www.sec.gov/Archives/edgar/data/709005/000165495423008766/nrom_defa14a.htm.

115.    By July 6 (the original Annual Meeting date), BT Brands had received proxy voting authority for approximately 9,688,159 shares (45% of the Company's outstanding shares of common stock), and Scott Mobley had received proxy voting authority for approximately 2,834,531 shares (12.76% of the Company's outstanding shares).

116.    The Company's Directors are elected "by a plurality of the votes cast with respect to the election of directors and the nominees receiving the greatest number of votes, up to the number of directors, shall be elected as directors." Bylaws, Art. II, Sec. 5.

117.    Thus, as of the date of the Annual Meeting as originally scheduled, BT Brands had proxy voting authority in favor of Mr. Copperud for a plurality of shares entitled to be voted.

118.    On information and belief, the true reason that the Company postponed the July 6 Annual Meeting was that it could not convene the Annual Meeting with a quorum comprising only shares that would be voted at the Meeting in favor of Mr. Mobley.

119.    As of the date of this filing, BT Brands has proxy voting authority for approximately 10,194,885 shares (45% of the Company's outstanding shares of common stock), and Mr. Mobley has proxy voting authority for approximately 2,851,046 shares (12.83% of the Company's outstanding shares of common stock). On information and belief, Paul Mobley and Scott Mobley together hold approximately 1.6 million shares in street name. Messrs. Wildman and Herbst, together, hold approximately 330,000 shares in street name. If these Directors returned proxies for their roughly 1.93 million combined shares (such that their votes were included in Broadridge's and Mediant's vote reports), those votes would comprise all but

approximately 921,046 of Mr. Mobley's 2,851,046 votes. In other words, if these Directors'

shares are included in Mr. Mobley's current vote count, that means that only approximately 4.4%

of the Company's outstanding shares would be voted in his favor.

120.    As of the date of this filing, even if Paul Mobley's and Scott Mobley's 2,938,946

beneficially owned shares are added to Mr. Mobley's proxy votes, BT Brands still has proxy

voting authority in favor of Mr. Copperud for a plurality of shares entitled to be voted.

121.    If (i) the Company convenes the Annual Meeting; (ii) a directorial election is held

at the Annual Meeting; (iii) in the directorial election, BT Brands is allowed to vote the shares

for which it has received proxy voting authority; (iv) BT Brands votes the shares for which it has

received proxy voting authority in favor of Mr. Copperud in the directorial election (as it intends

to do); and (v) the votes BT Brands casts in the directorial election in favor of Mr. Copperud are

counted, the Company's shareholders will have elected Mr. Copperud to replace Mr. Mobley as

a Class III director.

122.    The Company has stated that it will not allow Mr. Copperud to be nominated at

the Annual Meeting, and "[a]ny vote claimed to be cast in favor of any other nominee will not be

counted[.]" Noble Roman's, Inc. Defin. Additional Materials (Schedule 14A) (July 27, 2023),

https://www.sec.gov/Archives/edgar/data/709005/000165495423009739/btb_defa14a.htm.

123.    On information and belief, the Company will again postpone the Annual Meeting

before its currently scheduled date, August 10, 2023, because the Company will again be unable

to convene the Annual Meeting with a quorum comprising only shares that would be voted at the

Meeting in favor of Mr. Mobley.

124.    As the Company stated in its Definitive Proxy Statement:

[The Company's] Board of Directors has a classified structure in which the
directors are divided into three classes with approximately one-third of the

directors standing for election each year. Under this structure, directors serve staggered three-year terms *or until their successors are duly elected and qualified*. At this year's meeting, one Class III director [Scott Mobley] is standing for re-election.

NROM Definitive Proxy at 7 (emphasis added).

125.    The Company's Bylaws provide that "[t]he term of office of a director shall continue after the annual meeting at which it is to expire until the director's term of office ends … or the successor to such director shall be elected and qualified." Bylaws Art. III, Sec. 3.

126.    Thus, until the Company (i) convenes an Annual Meeting of Shareholders; and (ii) conducts a directorial election, Mr. Mobley will remain in office, despite the fact that a sufficient number of shareholders have provided proxy voting authority to remove Mr. Mobley from office and replace him with Mr. Copperud.

127.    Plaintiffs, who are among the owners of the 9,702,473 shares of the Company's outstanding common stock to date who have provided proxy voting authority to remove Mr. Mobley and replace him with Mr. Copperud, will be irreparably injured unless the Company is ordered to: (i) convene the Annual Meeting; (ii) hold a directorial election at the Annual Meeting; (iii) refrain from "refus[ing] to acknowledge the nomination of Mr. Copperud" at the directorial election, whether pursuant to Bylaws Art. II, Sec. 6 or under any other purported source of authority; (iv) permit BT Brands to vote the shares for which it has received proxy voting authority in the directorial election; (v) count the votes BT Brands casts or causes to be cast in the directorial election (or cause such votes to be counted); and (vi) recognize and give effect to the choice of the Company's shareholders, as reflected in the results of the directorial election (*i.e.*, permit Mr. Copperud to take the seat to which he will have been duly elected).

128.    To remedy or prevent these injuries, and to prevent future harm, injunctive relief is required as requested below.

36

**COUNT IV: BREACH OF FIDUCIARY DUTIES**
**Against Defendants Paul W. Mobley, A. Scott Mobley, Marcel Herbst,**
**Douglas H. Coape-Arnold, and William Wildman**

129.     BT Brands and Mr. Copperud incorporate by reference the allegations in

paragraphs 1-83 above.

130.     A Director of an Indiana corporation must "discharge the duties as a Director …

(1) in good faith; (2) with the care an ordinarily prudent person in a like position would exercise

under similar circumstances; and (3) in a manner the Director reasonably believes to be in the

best interest of the corporation." Ind. Code § 23-1-35-1(a). "[T]hese duties include a duty of care

… as well as a duty of a duty of utmost good faith and loyalty." *Levin v. Miller*, 2017 U.S. Dist.

LEXIS 49949, at *39 (S.D. Ind. Mar. 31, 2017).

131.     Directors incur liability for breaches of these duties that "constitute[] willful

misconduct or recklessness." Ind. Code § 23-1-35-1(e)(2).

132.     The Company's Bylaws prescribe similar duties and liabilities:

A director shall, based on the facts then known to the director, discharge the
duties as a director … in good faith, with the care an ordinarily prudent person in
a like position would exercise under similar circumstances, and in a manner the
director reasonably believes to be in the best interests of the Corporation. A
director is not liable to the Corporation for any action taken as a director, or any
failure to take any action, regardless of the alleged breach of duty, including
alleged breaches of the duty of care, the duty of loyalty, and the duty of good
faith, unless: (a) the director has breached or failed to perform the duties of the
director's office in accordance with the standard of care set forth above; and
(b) the breach or failure to perform constitutes willful misconduct or recklessness.

Bylaws, Art. V, Sec. 2.

133.     The Bylaws require its officers to conduct shareholder meetings impartially,

particularly when it comes to voting. First, the Bylaws provide that "[t]he Chairman of the

Board, or in the absence of the Chairman, the Chief Executive Officer, or, if neither is present,

any executive officer of the Corporation, **shall** preside as chairman at any meeting of the

shareholders." Bylaws Art. II, Sec. 10 (emphasis added). The Bylaws continue:

> The chairman of any meeting of shareholders **shall** determine the order of business and the procedure at the meeting, including regulation of the manner of voting and the conduct of discussion. The Corporation **shall** keep minutes of the proceedings of its shareholders in paper or electronic form.

*Id.* (emphasis added).

134.    The Bylaws then depart from the preceding mandatory language:

> The chairman of any meeting of shareholders to elect directors **may** refuse to acknowledge the nomination of any person not made in compliance with the [specified] procedure[.]

Bylaws Art. II, Sec. 6 (emphasis added). Further:

> The Chairman of the Board, or in the absence of the Chairman, the Chief Executive Officer, or, if neither is present, any executive officer of the Corporation, **may** appoint one or more inspectors of election, who **may** be employees of the Corporation, to act at such meeting or any adjournment thereof and make a written report thereof. In case any person appointed fails to appear or to act, the vacancy **may** be filled by the chairman of the meeting.

*Id.* (emphasis added). The Bylaws prescribe a strict code of conduct for these "inspectors":

> Each inspector, before entering upon the discharge of his or her duties, **shall** take and sign an oath faithfully to execute the duties of inspector at such meeting with **strict impartiality** and according to the best of his or her ability. The duties of the inspectors shall be to ascertain and report the number of shares represented at the meeting, to determine the validity and effect of all proxies, **to count all votes** and report the results thereof, and to do other such acts as are proper to conduct elections and voting **with impartiality and fairness to the shareholders**.

*Id.* (emphasis added).

135.    The Directors' action in purporting to disqualify Mr. Copperuds'

nomination violated their fiduciary duties, especially considering the context in which

their action was taken:

> (1)   after the Company discussed Mr. Copperud's nomination during its May 11, 2023 investor conference call, *see supra* ¶ 35;

(2)  after Mr. Paul Mobley referenced that nomination in his May 16, 2023 email to shareholders, *see supra* ¶ 36;

(3)  after the Company included BT Brands' notification of nomination in its May 25, 2023 Preliminary Proxy Statement, *see supra* ¶ 38;

(4)  after the Company included Mr. Copperud in its May 26, 2023 Proxy Card as "BT Brands, INC. Nominee," *see supra* ¶ 39;

(5)  after the Company failed to object to BT Brands' June 1, 2023 Preliminary Proxy Statement, *see supra* ¶ 40;

(6)  after the Company included BT Brands' notification of nomination in its June 12, 2023 revised Preliminary Proxy Statement, *see supra* ¶ 43;

(7)  after the Company failed to object to BT Brands' June 13, 2023 revised Preliminary Proxy Statement, *see supra* ¶ 44;

(8)  after the Company included BT Brands' notification of nomination in its June 16, 2023 Definitive Proxy Statement, *see supra* ¶ 47;

(9)  after the Company failed to object to BT Brands' June 16, 2023 Definitive Proxy Statement, *see supra* ¶ 58;

(10) after the Company attacked Mr. Copperud's nomination in its June 16, 2023 filing of Additional Definitive Materials, but not on the ground that the notice of nomination was ineffective, *see supra* ¶ 59;

(11)  after the Company attacked Mr. Copperud's nomination in its June 22, 2023 "News Bulletin" but, again, not on the ground that the notice of the nomination was ineffective, *see supra* ¶ 60; and

(12)  after the Company failed to object to BT Brands' June 23, 2023 filing of Additional Definitive Materials. *see supra* ¶ 62.

136.    The Directors acted willfully, recklessly, in bad faith, and in violation of their duties of care, loyalty, and good faith by (i) purporting to disqualify Mr. Copperud when the shareholders' demonstrated their selection of Mr. Copperud over Mr. Mobley for election as the Company's next Class III director by returning proxy voting authority for a sufficient number of shares to elect Mr. Copperud; and (ii) postponing the Annual Meeting under these circumstances, with the effect of allowing Mr. Mobley to retain his

Class III director position despite the shareholders' expressed will to remove him from that position. *See supra* ¶¶ 65-82.

137.    The Directors' violations of their fiduciary duties have already caused and are continuing to cause irreparable injury to BT Brands, which nominated Mr. Copperud; to Mr. Copperud as nominee; and to the owners of the 9,702,473 shares of the Company's outstanding common stock who, to date, have returned proxies voting their shares to elect Mr. Copperud, in that the Directors have caused shareholder confusion and are attempting to suppress further proxy votes in Mr. Copperud's favor.

138.    Moreover, to the extent that "[t]he chairman of any meeting of the shareholders to elect directors" should, in light of these circumstances, "refuse to acknowledge the nomination" of Mr. Copperud, such action would be in violation of that chairman's fiduciary duties of care, loyalty, and good faith, not only to BT Brands and Mr. Copperud, but also to the owners of the 41.39% of the Company's outstanding common stock who have returned proxies voting their shares to elect Mr. Copperud.

139.    To remedy or prevent these injuries, and to prevent future irreparable harm, injunctive relief is required as requested below.

### COUNT V: DECLARATORY JUDGMENT
**Against Defendants Noble Romans Inc., Paul W. Mobley, A. Scott Mobley, Marcel Herbst, Douglas H. Coape-Arnold, and William Wildman**

140.    BT Brands and Mr. Copperud incorporate by reference the allegations in paragraphs 1-21, 72, 74, 76, 107-112, 116, 125, and 132-134 above.

141.    An actual controversy exists between the Directors and BT Brands and Mr. Copperud regarding their rights and obligations under the Company's Bylaws.

DocuSign Envelope ID: B9D58726-F8F4-4948-B9BE-9C020C5B9BC3

142.    Bylaws are contracts between a corporation and its members/shareholders and are interpreted as such. *See, e.g.*, *Centaur Partners, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 928 (Del. 1990).

143.    Under standard principles of contract interpretation, the Company's Bylaws must be interpreted to permit BT Brands' nomination of Mr. Copperud regardless of whether it was a "shareholder of record."

144.    The Directors' actions are inconsistent with these interpretations of the Bylaws.

145.    The Directors' actions, based on their erroneous interpretation of the Bylaws, have caused and are continuing to cause Plaintiffs irreparable harm, insofar as they are creating shareholder confusion and suppressing the shareholders' submission of proxy voting authority for Mr. Copperud.

146.    To remedy or prevent these injuries, and to prevent future irreparable harm, declaratory and injunctive relief is required as requested below.

*       *       *

## RELIEF REQUESTED

Wherefore, Plaintiffs request preliminary and permanent injunctive relief:

A.    With respect to Counts I and II, ordering the Company to file amendments to its annual reports on Form 10-K and proxy statements on Schedule 14A filed with the SEC over the last three years to disclose the true amount of all compensation, including non-cash compensation, paid to the Company's officers, as required by Item 402 of Regulation S-K;

B.    With respect to Counts III, IV, and V, ordering:

i.    the Company and its Directors to correct their ultra vires statements to the Company's shareholders that Mr. Copperud's nomination had or has been invalidated;

DocuSign Envelope ID: B9D258726-F8F4-4948-80BE-9C020C5B9BC3

    ii.     the Company and its Directors to refrain from making further statements to the effect that Mr. Copperud's nomination had or has been invalidated;

    iii.    the Company to

        (a)    convene an Annual Meeting of Shareholders;

        (b)    hold a directorial election at that Annual Meeting;

        (c)    refrain from "refus[ing] to acknowledge the nomination of Mr. Copperud" at the directorial election, whether pursuant to Bylaws Art. II, Sec. 6 or under any other purported source of authority;

        (d)    permit BT Brands to vote the shares for which it has received proxy voting authority in the directorial election;

        (e)    count the votes BT Brands casts or causes to be cast in the directorial election (or cause such votes to be counted); and

        (f)    recognize and give effect to the choice of the Company's shareholders, as reflected in the results of the directorial election (i.e., permit Mr. Copperud to take the seat to which he will have been duly elected); and

    C.    with respect to all Counts, such other and further relief as this Court deems just and proper.

Concurrently with this Complaint, Plaintiffs are filing a motion for temporary restraining order awarding injunctive relief consistent with the foregoing. Finally, Plaintiffs wish to note that they are not seeking attorneys' fees in pursuing this action. *Cf. In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016).

*    *    *

**VERIFICATION**

Under penalty of perjury, I verify that the factual allegations in the foregoing are true and correct to the best of my knowledge, understanding, and belief.

DocuSign Envelope ID: B9D58726-E8F4-4948-89BE-9C020C5B9BC3

Dated: 8/2/2023
_____

*Gary Copperud*
_____
Gary Copperud
CEO, BT Brands, Inc.

Dated: August 2, 2023

Respectfully submitted,

*/s/ Daniel R. Kelley*
Michael Rabinowitch, # 18117-49
Daniel R. Kelley, # 30706-49
Andrew D. Dettmer, # 35202-49

*Counsel for Plaintiffs BT Brands, Inc. and
Gary Copperud*

DINSMORE & SHOHL LLP
211 N. Pennsylvania Street, Suite 1800
Indianapolis, IN 46204
Misha.Rabinowitch@Dinsmore.com
Daniel.Kelley@Dinsmore.com
Andrew.Dettmer@Dinsmore.com