UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BT BRANDS, INC., <br> GARY COPPERUD, <br><br> Plaintiffs, <br><br> v. <br><br> NOBLE ROMAN'S INC., <br> A. SCOTT MOBLEY, <br> PAUL W. MOBLEY, <br> MARCEL HERBST, <br> DOUGLAS H. COAPE-ARNOLD, <br> WILLIAM WILDMAN, <br><br> Defendants. | No. 1:23-cv-01352-JRS-MJD |

**Order on Preliminary Injunction**

This is a shareholder direct action about a corporate election. Now before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 6.) Because the Court has the benefit of both Parties' briefing and has heard oral argument at the hearing on August 8, 2023, and because the relief the Court considers is more substantial than the 14-day period allowed for a temporary restraining order, Fed. R. Civ. P. 65(b)(2), the Court rules on a preliminary injunction, not a temporary restraining order. *See Decker v. Lammer*, No. 21-1328, 2022 WL 135429, at *2 (7th Cir. Jan. 14, 2022) (explaining differences between temporary restraining orders and preliminary injunctions). In brief, Plaintiffs are[1] beneficiary owners of shares in Noble Romans, Inc., and seek to have Copperud

---

[1] Defendants' counsel was unwilling, at oral argument, to admit that Plaintiffs own what they claim to own.

nominated and elected to its board. Defendants are the company itself and its five-member board.

## I. Discussion

### A. Requested Relief

Plaintiffs allege various failings in the lead-up to a corporate election. First, Plaintiffs allege Defendants violated 17 C.F.R. § 229.402(c)(2)(ix)(F) (and by extension Sections 14(a) and 20(a) of the Exchange Act) by failing to disclose in its Proxy Statements the full extent of directors' compensation, principally the insurance premiums paid for the Mobleys' life insurance, or the amount of any perquisites exceeding $10,000. (Pls.' Compl. 28–31, ECF No. 1.) Second, Plaintiffs allege Defendants violate Indiana Code § 23-1-29-1(a), requiring annual shareholder meetings, because no shareholder meeting has been held in the first half of 2023. *See* Ind. Code 23-1-29-3(a)(1) (authorizing court to order annual meeting when petitioned by shareholder after that deadline). (Pls.' Compl. 31–36, ECF No. 1.) Third, Plaintiffs allege Defendants violate their fiduciary duty to shareholders by refusing to accept Copperud's nomination. (Pls.' Compl. 37–40, ECF No. 1.) Fourth and finally, Plaintiffs allege the company bylaws compel the acceptance of Copperud's nomination. (Pls.' Compl. 40–41.)

Those allegations are paired with requests for injunctive relief. Thus Plaintiffs seek an injunction "ordering Defendants to file a corrected Definitive Proxy Statement" with the insurance-premium disclosures—which would address the alleged Section 14(a) violations; an injunction "[o]rdering the Defendants to interpret

the Bylaws consistent with the provisions of Indiana and Federal law set forth in the brief accompanying this Motion"—which would one way or another guarantee Copperud's nomination is accepted; and an injunction "[o]rdering the Defendants to schedule a new Annual Meeting, after filing the corrected Definitive Proxy Statement, with a new record date set to occur no earlier than twenty (20) days before the new date of the Annual Meeting"—which would allow the first two injunctions time to take effect. (Pls.' Motion 1, ECF No. 6.)

### B. Legal Standard

"A preliminary injunction is 'an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)).

### C. Application

The Court applies the preliminary injunction standard to each request for relief.

First is the alleged violations of Section 14(a) and Section 20(a) of the Exchange Act. Those alleged violations are failures to disclose insurance premiums, a form of executive compensation the Company paid its officers the Mobleys. The Court does

not think the drastic remedy of a preliminary injunction is necessary here, because there is no irreparable harm in its absence. The harm caused by the violation is that shareholders are not perfectly informed about executive compensation before voting for their directors. Here, though, the allegedly undisclosed information is just one small piece of the Mobleys' compensation, the general outline of which is already known to voters. And the voters, based on what they know, are already going against the Defendants. So adding another piece of information that (presumably) weighs against them is unlikely to have any meaningful effect on the outcome of the vote. *Cf. Kuebler v. Vectren Corp.*, No. 3:18-cv-00113-RLY-MPB, 2018 WL 4003626, at *3 (S.D. Ind. Aug. 22, 2018) (adopting similar line of reasoning in denying a motion for preliminary injunction). Furthermore, Plaintiffs' filing of this suit, along with the ensuing press coverage, will have put other voters on notice of the undisclosed information. *See, e.g.*, "BT Brands Brings Lawsuit Against Noble Roman's and its Directors," BusinessWire, https://www.businesswire.com/news/home/20230803095821/en/BT-Brands-Brings-Lawsuit-Against-Noble-Roman%E2%80%99s-and-Its-Directors, "Noble Roman's sparring with investor over proposed leadership shake-up," Inside Indiana Business, https://www.insideindianabusiness.com/articles/noble-romans-sparring-with-investor-over-proposed-leadership-shake-up. Also, and finally, and assuming without deciding materiality in the alleged omissions, there are lesser remedies— such as a proxy statement supplement—that are adequate. *See Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 621 (S.D.N.Y. 1989) (declining to issue a preliminary

4

injunction to cure violation of required disclosures) ("[P]roper relief on these facts would be a curative disclosure, not a preliminary injunction."); *but see Bath Indus., Inc. v. Blot*, 427 F.2d 97, 113 (7th Cir. 1970) (upholding district court finding of "irreparable harm" for failure to make required disclosures).

Second, any violation of Indiana Code § 23-1-29-1(a), the law requiring annual meetings, cannot be remedied by a preliminary injunction here. There is already a shareholder meeting set for August 10, 2023—it is unlikely the Court could effect one sooner. (Which is another way of saying there is no irreparable harm in the absence of an injunction: even without an injunction the harm is soon set right.) In fact, Plaintiffs request the Court to set a meeting for an even later date. Indeed, Plaintiffs' grievance is not so much that the meeting is untimely but that it is not shaping up as they wish. That is not a reason for the Court to grant injunctive relief on the statute in question.

The third and fourth issues—whether the bylaws compel Defendants to accept Copperud's nomination—are intertwined. One of Plaintiffs' arguments is that Copperud's nomination is not invalid, because it is permitted by the bylaws, so the Directors may not refuse his nomination. The other argument is that Copperud's nomination, though invalid, may nonetheless be accepted, and the Directors have a fiduciary duty to accept it under the circumstances.

Plaintiffs have not only failed to establish irreparable harm in the disregard of Copperud's nomination, but also have not established a sufficient "likelihood of success" on the first argument. The bylaws say "[n]ominations of persons for election

5

as directors may be made by the Board or by any shareholder who is a shareholder of record at the time of giving the notice of nomination[.]" (Bylaws Article II, Section 6.) That sentence seems to the Court most probably (the Court makes no interpretative holding) to give an exclusive list: nominations may be made by the Board or shareholders of record *and no one else*. That reading is an ordinary application of the canon *expressio unius est exclusio alterius*. It also comports with the fairly elaborate nomination procedure, governing "shareholder[s] of record," that follows: why set up procedural hoops for just one type of nominator? It would not make sense for non-shareholders of record, unnamed in the bylaws, to have no rules for their nominations. And if the Court's preferred reading turns out to be correct, then the Copperud nomination is procedurally invalid. Counsel admits that. There is no dispute that the Copperud nomination came from BT Brands, a beneficial owner, and not a shareholder of record. Given the real possibility (though, again, not the certainty) that the bylaws in fact prohibit nominations by non-shareholders of record, the Court will not grant a preliminary injunction on those grounds. "[T]he applicant must make a strong showing that she is likely to succeed on the merits. . . . . [A] possibility of success is not enough." *Illinois Republican Party*, 973 F.3d at 762.

On the other argument, that the Directors must accept Copperud's nomination because they "may," Plaintiffs fare somewhat better. The bylaws say "[t]he chairman of any meeting of shareholders to elect directors may refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure." (Bylaws Article II, Section 6.) And if the chairman "may refuse" non-compliant

6

nominations, he must also be able to accept them. That much is clear enough. But all it establishes is that the directors have discretion either to accept or reject procedurally defective nominations. In an attempt to get from "may accept" to "must accept," Plaintiffs cite to a body of Delaware caselaw that valorizes shareholder voting rights: those cases at times support the proposition that directors *must* allow shareholder votes to proceed despite bylaws to the contrary. *E.g., Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 438 (Del. 1971); *Aprahamian v. HBO & Co.*, 531 A.2d 1204, 1208 (Del. Ch. 1987); *Blasius Industries, Inc. v. Atlas Corp.*, 564 A.2d 651 (Del. Ch. 1988). The Court acknowledges those cases, and the equitable issues raised there are potentially weighty. But the Court need not wade into the equities.[2] Indiana law is deferential to directors' business decisions, Ind. Code § 23-1-35-1(e), so deferential, in fact, that the legislature cautions the Court against applying Delaware law when ruling on the business judgment rule, *id.* § 23-1-35-1(f). Here, Defendants have rejected the Copperud nomination. The Parties admit that nomination was procedurally defective under the bylaws because made by a beneficial owner, not a shareholder of record. The Parties also admit that the directors have discretion under

---

[2] The Court is not persuaded, in any event, that the alleged facts here implicate the same equitable concerns raised in the Delaware cases. Defendants seem to have relied on BT Brands' explicit representation that it was a "shareholder of record" when the nomination attempt was initially accepted. (Defs.' Response 3–4, ECF No. 35 (explaining Defendants' position); Nomination 1, ECF 1-6 (BT Brands' notice of intent to nominate) ("The Shareholder [BT Brands] represents that it is the holder of record of 1,421,647 shares of the Company's the Common Stock[.]").) Defendants' later decision to disqualify the nomination, because BT Brands' representation was false, might well have been a reasonable course correction based on new information. It is not on its face a misuse of corporate machinery. (*See* ECF 1-13.) Copperud's nomination was disqualified by the simple application of a longstanding and openly known bylaw.

7

the bylaws to reject procedurally defective nominations. So, Plaintiffs are attempting to rely on Delaware caselaw to overcome the strong presumption of regularity Indiana confers on Defendants' business decision.³ And reliance on Delaware caselaw is disfavored by statute.⁴ Plaintiffs admit they locate no Indiana caselaw supporting a standard like Delaware's—in other words, no Indiana case supports the proposition that directors *must* allow shareholder votes to go forward even against the corporation's bylaws. While the Court is not prepared to say that Plaintiffs' case is entirely hopeless, it is at the outset an uphill battle; they have not made the "strong showing" of possible success that the Court must find to grant preliminary injunctive relief.

Because the Court finds either no irreparable harm or no likelihood of success on the merits for each claim and its requested relief, the Court does not reach the other factors in the preliminary injunction analysis. *See, e.g.*, *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1326 (7th Cir. 2022) (citing *Winter*, 555 U.S. at 31–33). If the Court were to evaluate the balance of harms and public interest, it would neither find that the equities tip in Plaintiffs' favor, nor that an injunction here is in

---

³ And that decision, even without its statutory shield, is not outrageous. It seems *prima facie* reasonable for a director to follow corporate bylaws; the nomination procedure helps ensure regularity in the corporation's internal governance; that nomination procedure was publicly known, and Plaintiffs, who are sophisticated, could easily have complied.

⁴ Plaintiffs rely heavily on *Ipalco Enters. v. PSI Resources*, 1993 U.S. Dist. LEXIS 19805, a non-precedential and unreported case. *Ipalco*, though it relied in part on the Delaware equitable cases, ultimately rested its holding on the proposition that directors cannot postpone a shareholder meeting in violation of statute. The Court is not persuaded by it here: the challenged action here is not a statutory violation but rather a discretionary act permitted by the bylaws, and the Indiana statute makes no carveout in the business judgment rule comparable to that espoused by the Delaware courts.

the public interest. For example, weighed against Plaintiffs' delay in filing this suit and seeking to delay the annual meeting—each factor totally within their control as masters of their complaint—is the harm to Defendants in having to prepare anew for a postponed meeting. And the public interest in the orderly conduct of corporate governance is better served by allowing to stand the presumptively valid business decision apparently made in compliance with Defendants' governing documents than it is by allowing a speculative, Court-ordered intervention in the Company's internal affairs.

## II. Conclusion

Here, Plaintiffs have not shown that a temporary restraining order or preliminary injunction is appropriate on their claims. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (ECF No. 6), is **denied.** No relief shall issue at this time.

**SO ORDERED.**

Date: 08/09/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrew David Dettmer
Dinsmore & Shohl LLP - Indianapolis
andrew.dettmer@dinsmore.com

Daniel R. Kelley
DINSMORE & SHOHL LLP (Indianapolis)
daniel.kelley@dinsmore.com

Jaime L. Meyer
HOLLINGSWORTH ROBERTS MEANS, LLC
jmeyer@hrmlaw.com

Michael Rabinowitch
DINSMORE & SHOHL LLP (Indianapolis)
misha.rabinowitch@dinsmore.com

Jeffrey D. Roberts
HOLLINGSWORTH ROBERTS MEANS LLC
jroberts@hrmlaw.com

Ashley Roncevic
Hollingsworth Roberts Means LLC
aroncevic@hrmlaw.com